IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CARL J. THOMPSON,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **5:20-cv-1374** |
| | § | |
| **INTACT SERVICES USA LLC and** | § | |
| **ONEBEACON INSURANCE** | § | |
| **PENSION PLAN,** | § | |
| **Defendants** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Intact Services USA LLC and OneBeacon Insurance Pension Plan are wrongfully withholding pension benefits due Carl J. Thompson.

### I. PARTIES

1.      Plaintiff Carl J. Thompson is a resident of San Antonio, Bexar County, Texas.

2.      Defendant Intact Services USA LLC is the plan administrator of the OneBeacon Insurance Pension Plan and can be served with citation by serving its agent for service of legal process Corporation Service Company d/b/a Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

1

3.     Defendant OneBeacon Insurance Pension Plan (the Plan) is a pension plan that owes pension benefits to Plaintiff Carl J. Thompson.  The Plan can be served by serving the Plan administrator, Intact Services USA LLC, through its agent for service of legal process Corporation Service Company d/b/a Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas  78701-3218.

## II. JURISDICTION AND VENUE

4.     This lawsuit is a claim for pension benefits provided by an ERISA pension benefit plan brought under 29 U.S.C. §1132(a)(1)(B) and a claim for injunctive relief brought under 29 U.S.C. §1132(a)(3).  This court has jurisdiction over this claim for pension benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA").   Venue is proper in the Western District of Texas, San Antonio Division, in accordance with 29 U.S.C. §1132(e)(2) as the pension benefit payment obligations due under the Plan are to Thompson at his home in San Antonio, Texas.

## III.  STATEMENT OF FACTS

5.     Jerry Thompson worked for OneBeacon Insurance and was a vested participant in the Plan when he retired.  He began receiving pension benefits under the Plan on July 1, 2000, the first month after he turned 62 years of age.   His pension benefit was $3,010.28 a month.

6.     Approximately six years later, on June 30, 2006, Mr. Thompson was sent a letter from the Plan administrators.  They advised that he had been overpaid from the

inception of the payment of his pension benefits.  Due to their miscalculation, specifically their failure to account for Thompson's eligibility for a Social Security Supplement, the plan administrators indicated that he should have been receiving $2,449.21 per month rather than $3,010.289 per month, a difference of $561.07 per month.  The plan administrators advised Thompson that as of June 30, 2006 his pension benefit would be corrected regarding future payments and that he owed the Plan $40,733.64, the sum of the overpayments made over the six-year period from July 1, 2000 until July 1, 2006.

7.   Thompson was given two options to rectify the Plan administrators' mistake: 1) he could remit a check to the Plan in the amount of $40,733.64 in order to cover the overpayment, or 2) he could make the repayment through a reduction in his future pension benefit payments.  He was asked to return the form acknowledging his agreement to one of these two options.  He didn't return the form.  Thompson's pension was reduced to $2,473.70 per month for the months of July and August, 2006.  Subsequently, his revised pension benefit, $2,449.21, was reduced another $362,69 per month, making his pension benefit $2,111.01 per month beginning in September 2006.

8.   The Plan administrators deducted $362.70 per month from Thompson's pension year after year to collect the $40,733.64 overpayment made as a result of their mistake.  In June, 2015, Thompson sent a letter to the Plan administrators, indicating that by January 2016 the full amount that was overpaid, $40,733.64, would be collected. Thompson requested that his pension benefit be increased by $362.69 per month beginning January 1, 2016, i.e. that he be paid his full pension without reduction due to the overpayment.

9.   In response, the Plan administrators said they would be reducing his pension by $362.69 per month for his lifetime.  They also advised that due to the time value of money, the overpayment would not be satisfied by January 1, 2016.   The Plan administrators responded as follows:

> "…However, the time value of money (i.e. interest) is being charged from when the error was discovered and you were given the opportunity to repay it in full or have your monthly lifetime pension reduced by the actuarially equivalent amount.  The Plan's actuarial equivalence basis is 5.5% interest rate and 1984 Unisex Pension Mortality Table setback 2 years."

10.   Thompson continued his dialogue with the Plan administrators, requesting further explanation as to why his pension wouldn't be increased, i.e. why the deductions wouldn't stop during his lifetime since the debt had been repaid in full.  The Plan administrators advised that they had given the matter a full review and that Thompson wasn't entitled to an increase in pension benefits.

11.   Accepting the Plan administrators' argument that the time value of money must be accounted for when a plan reimbursement is made over time, but not accepting that it was lawful for the Plan administrators to arbitrarily apply the deduction for his lifetime, Thompson sent the Plan administrators a letter in November 2016 that included a loan amortization schedule.   The loan amortization schedule assumes a loan of $40,773.64 (the amount overpaid due to the Plan administrators' error) and a 5.5% interest rate, the interest rate applied by the Plan administrators in calculating the monthly repayment.  The loan amortization shows that as of mid-November 2019 a total sum of $57,669.19 was paid to the Plan in 159 payments of $362.70 per month.   The amortization schedule that Thompson provided showed that as of November 2019, the

Plan would receive full repayment of the principal, $40,773.64, and $16,659.98 in interest.

12.   The Plan administrators, referring to IRS regulations, indicated that they believed that the original decision was correct, that they could lawfully continue the $362.70 monthly deduction for the length of Thompson's lifetime, regardless of the amount that ended up being collected.  They advised Thompson that they would not respond to any further inquiries regarding his pension.

13.   At no time during this dialogue did the Plan administrators comply with the claims procedures established by the Secretary of the U.S. Department of Labor (Secretary), 29 CFR §2560.503-1.

14.   Thompson continued to repay the debt to the Plan with an interest rate of 5.5% per annum through a reduction of his pension at the rate of $362.70.  In November 2019, the debt of $40,773.64 was paid in full, and, in addition, the Plan received $16,659.98 in interest.  Despite being repaid in full and reaping the benefit of a high interest rate, in December, 2019 and thereafter, the Plan administrators have continued to deduct $362.70 from Thompson's pension.

15.   Thompson hired the undersigned counsel, who requested by letter dated February 19, 2020 that Thompson's full pension of $2,449.21 be resumed, effective December 1, 2019, since the debt had been repaid with substantial interest.   The Plan was advised that as of mid-November, 2019, they were violating the nonforfeitability requirements of ERISA and the Plan.   The Plan administrators were told to consider the letter a formal claim for benefits.  The Plan administrators did not respond.

### Exhaustion of Appeal Requirements

16.    The Plan administrators never complied with the claims procedures established by the Secretary, 29 C.F.R. §2560.503-1, during this dialogue regarding Thompson's pension.    Since the Plan administrators failed to comply with ERISA's claims procedure regulations, Thompson is deemed to have exhausted the administrative remedies available under the Plan and may proceed with this claim for benefits under the Plan.  29 C.F.R. §2560.503-1(*l*)1.

### Standard of Review

17.    Since the Plan administrators did not comply with claims procedures required by the Plan and the Secretary, this matter should be reviewed under a preponderance of the evidence standard of review.  In the unlikely event that the Court determines that the Plan administrators have retained any discretionary authority, the Plan administrators have abused their discretion in continuing to take a portion of Thompson's pension benefit after November 2019.

### IV.  CAUSES OF ACTION UNDER ERISA

**Count I:    Claim for Pension Benefits**
**Under 29 U.S.C. §1132(a)(1)(B) of ERISA**

18.  The Plan has been repaid in full for the Plan administrator's mistake, with substantial interest.   The Plan administrators no longer have Plan authority to take a portion of Thompson's pension.  Thompson has a right to additional pension benefits under the Plan beginning in November 2019.  In November 2019 he is

entitled to $235.57 in additional benefits.   Beginning December 2019 and thereafter he is entitled to an additional pension benefit of $362.70 per month.

**Count II:    Claim for Injunctive Relief Under 29 U.S.C. §1132(a)(3)**

19.   After Thompson repaid the debt in full, with substantial interest, the Plan administrators have continued taking of a portion of Thompson's pension benefit in mid-November 2019 and thereafter.  This action amounts to conversion and is a violation of the nonforfeitability requirements for vested pension plan benefits established by 29 U.S.C. §1053(a) of ERISA.  This Court should enjoin the Plan administrators from taking a portion of Thompson's pension benefit after November 2019 because, as of December 1, 2019, the taking of a portion of Thompson's pension operates as a forfeiture of his vested pension in violation of 29 U.S.C. §1053(a).

## V.  RELIEF REQUESTED

20.   As of mid-November, 2019, the Plan no longer authorized the continued taking of a portion of Thompson's pension.  The Plan had been paid back in full, with substantial interest.  Under the Plan, Thompson is entitled to additional pension benefits in the amount of $235.57 for November, 2019 and $362.70 per month beginning December 1, 2019.     Through March of 2021, Thompson is entitled to the sum of $5,676.07 in back benefits.   Thompson requests these back benefits as well as additional monthly benefits that accrue beginning April 1, 2021 and during the pendency of this litigation at the rate of $362.70 per month.

21.   Thompson requests injunctive relief under 29 U.S.C. §1132(a)(3) of ERISA.  This court should enjoin the Plan administrators from taking a portion of Thompson's pension.   This action violates the nonforfeitability rule for vested pensions, 29 U.S.C. §1053(a).

## VI.  <u>ATTORNEY'S FEES</u>

22.  Thompson requests his attorney's fees and costs under 29 U.S.C. §1132(g).

## <u>CONCLUSION</u>

Wherefore, premises considered, Thompson requests back benefits in the amount of $5,676.07, plus monthly pension benefits that accrue after April 1, 2021 but while this case is pending at the rate of $362.70 per month.   He also requests that the Plan administrators be enjoined from continuing to take $362.70 per month from his pension, as this taking violates the nonforfeitability rule for vested pensions.  He also requests his attorney's fees, for pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which he may show himself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Travis Building
405 N. St. Mary's Street, Suite 242
San Antonio, Texas  78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By*:   /s/ Jeffrey E. Dahl*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Carl J. Thompson**